# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**CHRISTIAN CYRUS,**
**Claimant Below, Petitioner**

**FILED**

November 6, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0640** (BOR Appeal No. 2053880)
(Claim No. 2016019282)

**SUDDENLINK COMMUNICATIONS,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Christian Cyrus, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Suddenlink Communications, by Counsel Steven K. Wellman, filed a timely response.

The issues on appeal are permanent partial disability and medical benefits. The claims administrator granted a 4% permanent partial disability award on June 2, 2017. On July 23, 2018, the claims administrator denied a request for the medications Flexeril, Depo-Medrol, and Ketorolac. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its January 16, 2019, Order. The Order was affirmed by the Board of Review on June 17, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Cyrus, a broad band technician, was injured in the course of his employment on January 19, 2016, when he slipped and fell on ice. The Employees' and Physicians' Report of Injury indicates he was diagnosed with neck strain, low back strain, left hip sprain, left elbow contusion, and unspecified head injury. A brain CT scan showed no evidence of acute injury or skull fracture. Cervical x-rays showed no evidence of acute fracture or dislocation. Lumbar x-rays showed no acute fracture or dislocation. They also showed facet arthropathy from T12-L2 and L3-S1.

1

Mr. Cyrus has a history of left shoulder issues. On November 29, 2014, he underwent a left shoulder MRI which showed a partial thickness tear of the bursal surface of the supraspinatus; attenuation of the biceps long head tendon, which placed it at risk for a full thickness tear; and a questionable posterior labral tear. On February 17, 2015, Mr. Cyrus underwent a left shoulder arthroscopy and subacromial decompression for a partial left shoulder rotator cuff tear.

Mr. Cyrus sought treatment from New River Health. On January 21, 2016, he saw Crystal Cooper, PA-C, for his work-related fall and reported headaches, left shoulder pain, and elbow pain. On May 17, 2016, he was diagnosed with trochanteric bursitis. On July 22, 2016, Mr. Cyrus reported that he was sitting at home on July 18, 2016, when he turned his head and heard a loud pop in his neck, followed by immediate pain. He stated that a few days later, he was playing badminton and heard another pop in his neck. On September 6, 2016, Mr. Cyrus reported that he was working full time and that his left hip pain had resolved. On February 22, 2017, a cervical MRI was reviewed and interpreted as showing disc displacement but no impingement. A left shoulder MRI showed fraying in the rotator cuff that was likely chronic. Mr. Cyrus was diagnosed with rotator cuff tendon tear, left shoulder pain, trochanteric bursitis, and knee sprain. He returned on April 18, 2017, and reported neck pain, right arm numbness, and decreased right hand function. Mr. Cyrus was diagnosed with knee sprain, rotator cuff tendon tear, and left shoulder pain and tingling. On August 7, 2017, he was seen for left shoulder pain. His hip bursitis had resolved. Mr. Cyrus was diagnosed with knee sprain, left shoulder joint pain, and upper back pain. The claim was held compensable for neck strain, low back sprain, left hip sprain, left elbow contusion, and head injury on February 1, 2016.

A September 20, 2016, cervical MRI showed a shallow non-compressive disc displacement at C3-4, a non-compressive disc displacement at C5-6, and a shallow disc displacement at C6-7 causing slight deformity of the thecal sac. A left shoulder MRI showed advanced degenerative labrum changes, a thickened glenohumeral ligament, significant improvement in the biceps tendon, and superficial fraying consistent with chronic partial thickness tear with a more pronounced scar.

Joseph Grady, M.D., performed an independent medical evaluation on April 11, 2017, in which he noted that Mr. Cyrus had a left shoulder rotator cuff repair a year earlier. He diagnosed cervical sprain superimposed on preexisting cervical spondylosis, lumbar sprain superimposed on preexisting degenerative spondylosis, left hip sprain, and left shoulder sprain superimposed on a preexisting rotator cuff tear. Dr. Grady noted that Mr. Cyrus had the preexisting conditions of multilevel lumbar facet arthropathy of the lumbar spine and multilevel cervical spondylosis, based on imaging studies. He had reached maximum medical improvement. Dr. Grady assessed 0% impairment for the left elbow contusion and head injury. For the cervical spine, Dr. Grady assessed 3% impairment for range of motion loss. He then placed Mr. Cyrus in Cervical Category II of West Virginia Code of State Rules § 85-20, which allows for 5-8% impairment. Dr. Grady therefore adjusted the rating to 5%; however, he apportioned 3% for preexisting conditions. For the lumbar spine and left hip, Dr. Grady assessed 0% impairment. For the left shoulder, he assessed 4% but apportioned 2% for a preexisting left shoulder injury. Dr. Grady's total impairment assessment for

the compensable injury was 4%. The claims administrator granted a 4% permanent partial disability award on June 2, 2017, based on Dr. Grady's evaluation.

A June 5, 2017, treatment note by Trista Bunty, PA, indicates Mr. Cyrus was seen for lower back pain, left shoulder pain, and numbness and tingling into the left leg. Ms. Bunty diagnosed low back pain and prescribed Depo-Medrol, Ketorolac, and Flexeril.

Michael Kominsky, D.C., performed an independent medical evaluation on March 6, 2018, in which he noted the compensable conditions as neck strain, low back strain, left hip sprain, left elbow contusion, head injury, and left shoulder contusion. Dr. Kominsky diagnosed chronic cervical sprain/strain, left elbow contusion, chronic left hip dysfunction, chronic lumbar sprain/strain, and left shoulder contusion. Mr. Cyrus had reached maximum medical improvement. Dr. Kominsky assessed 6% left shoulder impairment and apportioned 3% to the compensable injury. For the left hip, he found 2% impairment. He assessed 7% cervical impairment and placed Mr. Cyrus in Cervical Category II. He apportioned 2% to preexisting degenerative changes. For the lumbar spine, Dr. Kominsky found 8% range of motion impairment. Dr. Kominsky's total impairment assessment was 18%.

The claims administrator stated in a March 15, 2018, email to Mr. Cyrus that the claim was never formally accepted for the left shoulder. It stated that treatment was covered, and a permanent partial disability award was given for the left shoulder, but there was never a formal compensability ruling. On June 5, 2017, Ms. Brunty requested authorization of Depo-Medrol, Ketorolac, and Flexeril, as well as an MRI. She completed a work excuse indicating Mr. Cyrus was taken off of work from June 11, 2018, through June 25, 2018. On June 15, 2018, Mr. Cyrus completed a claim reopening application, alleging that he suffered an aggravation or progression of his compensable injury. He stated that he had a recent flare-up of pain and was unable to work. In a June 22, 2018, diagnosis update, Ms. Brunty requested that right shoulder joint pain and right-hand paresthesia be added to the claim. A work excuse was also completed that day, indicating that Mr. Cyrus was unable to work from June 22, 2018, through July 6, 2018. On July 12, 2018, Mr. Cyrus underwent a right shoulder MRI which showed a small partial thickness tear of the distal fibers of the infraspinatus foot place, a small probable labra tear, and mild acromioclavicular joint arthropathy. The claims administrator denied a request for Flexeril, Depo-Medrol, and Ketorolac on July 23, 2018. Ms. Brunty completed a diagnosis update on September 10, 2018, in which she requested the addition of partial thickness rotator cuff tear and left shoulder girdle sprain to the claim.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on October 24, 2018, in which he noted that Mr. Cyrus returned to work until June of 2018 when he stopped working due to the same symptoms but had no new injury. Dr. Mukkamala opined that there was no indication for Flexeril, Depo-Medrol, or Ketorolac. Dr. Mukkamala assessed 2% cervical impairment. He placed Mr. Cyrus in Cervical Category II and adjusted the rating to 5%. Dr. Mukkamala then apportioned 2% for preexisting degenerative changes. For the left shoulder, Dr. Mukkamala asssessed 2% impairment but apportioned 1% for a preexisting left shoulder injury. For the lumbar spine, Dr. Mukkamala found 2% impairment but placed Mr. Cyrus in Lumbar Category I, which allows for 0% impairment. He therefore adjusted the lumbar rating to 0%. Dr. Mukkamala's total impairment assessment was 3%.

The Office of Judges affirmed the claims administrator's decisions granting a 4% permanent partial disability award and denying authorization of the medications Flexeril, Depo-Medrol, and Ketorolac in its January 16, 2019, Order. Regarding permanent partial disability, the Office of Judges found that Dr. Kominsky's impairment assessments were considerably greater than those of Drs. Mukkamala and Grady. Dr. Kominsky found an additional 2% for the left elbow, 2% for the left hip, 3% for the cervical spine, and 8% for the lumbar spine. Dr. Kominsky's total impairment assessment was 18% while Dr. Grady found 4% and Dr. Mukkamala found 3%. The Office of Judges determined that the reports of Drs. Grady and Mukkamala were more reliable than that of Dr. Kominsky based on the remainder of the evidence. Treatment notes indicated that Mr. Cyrus no longer had elbow or hip pain. The Office of Judges therefore concluded that he has 0% permanent partial disability for either body part, based on the reports of Drs. Grady and Mukkamala. The Office of Judges next determined that Dr. Kominsky's finding of 8% lumbar impairment was unreliable and unsupported by the treatment notes of record. Treatment notes both before and after Dr. Kominsky's evaluation show no indication of lower back pain. The Office of Judges determined that Mr. Grady was entitled to 0% lower back impairment per the reports of Drs. Grady and Mukkamala. The Office of Judges ultimately concluded that Mr. Cyrus was entitled to no more than a 4% permanent partial disability award for his compensable injury.

Regarding medications, the Office of Judges found that Depo-Medrol, Ketorolac, and Flexeril were requested to treat lower back pain. The only compensable condition of record that would cause lower back pain is a lumbar sprain, which allows for treatment up to eight weeks. The treatment was requested two years after the compensable injury, well outside of the guidelines of West Virginia Code of State Rules § 85-20. Further, Dr. Mukkamala opined that Mr. Cyrus required no further treatment. The Office of Judges therefore denied the requested medications. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on June 17, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Dr. Kominksy's independent medical evaluation is unreliable as it is unsupported by the remainder of the medical evidence. The Office of Judges was correct to affirm a 4% permanent partial disability award. The Office of Judges was also correct to affirm the claims administrator's decision denying the requested medications. Further medical care for the compensable lumbar sprain is not indicated per West Virginia Code of State Rules § 85-20.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: November 6, 2020**


**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison